# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| **JONNI MARSELLE** | **PLAINTIFF** |
| v. | No. 3:19-cv-464-BJB |
| **UNUM INSURANCE COMPANY OF AMERICA** | **DEFENDANT** |

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Jonni Marselle sued Unum Insurance Company after it denied her long-term disability benefits under an insurance policy that Unum provided to Humana, Marselle's former employer. Complaint (DN 1-2). According to Marselle, she became disabled within the meaning of the policy on November 11, 2017. ¶ 8. Because she could no longer work the job she then held with Humana, Marselle submitted a claim to Unum for disability benefits. ¶ 10. After Unum denied her claim and rejected her appeal, ¶¶ 13–15, Marselle sued in Jefferson Circuit Court, alleging breach of contract and fiduciary duties, ¶¶ 20–21.

Unum removed the case to federal court on the basis of federal-question jurisdiction because the insurance policy qualifies as an employee-benefit plan under the Employee Retirement Income Security Act. Notice of Removal (DN 1) ¶ 3; 29 U.S.C. § 1003(a). Marselle moved for judgment reversing the administrative decision, arguing that Unum's denials were arbitrary and capricious. Motion for Judgment (DN 20-1) at 13–23. Although the Court is sympathetic to Marselle's apparently serious symptoms and conditions, the principal question raised here is whether Unum thoroughly considered these maladies and made a reasoned determination. The record indicates it did. Because Unum's denial of benefits was neither arbitrary nor capricious, the Court denies Marselle's motion.

### I.     Legal Standard

Under ERISA, a plan participant may file a lawsuit "to recover benefits due to [her] under the terms of [her] plan." 29 U.S.C. § 1132(a)(1)(B). When a plan vests discretion to determine benefits in the administrator, the Court reviews the administrator's decision under the deferential arbitrary-and-capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 115 (1989); *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 168–69 (6th Cir. 2003). Unum's insurance policy gives Unum "discretionary authority to make benefit determinations under the Plan," so the Court reviews Unum's decision under the arbitrary-and-capricious standard. Policy (DN 13-2) at 39–40.

In doing so, the Court focuses on "whether [the] ultimate decision denying benefits"—and not "discrete acts by the plan administrator"—were "arbitrary and capricious." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1066 (6th Cir. 2014) (quoting *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002)). The Court must uphold a decision if it "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006) (quotation omitted). Even if the record is "sufficient to support a finding of disability," the insurer's denial is "neither arbitrary nor capricious" so long as "there is a reasonable explanation for the administrator's decision." *Schwalm v. Guardian Life Ins. Co. of America*, 626 F.3d 299, 308 (6th Cir. 2010). And the Court's review is "limited to the administrative record" as it was "presented to the plan administrator at the time he or she determined the employee's eligibility." *Id.*

## II. Unum's Initial Decision

Humana employed Marselle as a consultant beginning in January 2016. Motion at 1–2. Her job required her to "constantly sit, occasionally stand, and occasionally walk." *Id.* at 2. Marselle mostly did computer work and periodically came into contact with others. *Id.* During this time, she experienced multiple health issues, including immunodeficiency, serious back pain, sinus infections, depression, and anxiety. *Id.* at 2–3. After a period working at home with a decreased workload, Marselle stopped working for Humana on November 10, 2017. *Id.* at 2. She claims that her symptoms became too severe for her to remain seated for that long or to mentally focus. *Id.* at 3. Specifically, Marselle's doctor recommended that she "work in 2 hour intervals" to alleviate her back pain from sitting and "avoid others since she has no immunity or ability to respond to vaccines." *Id.* at 11–12 (quoting Admin. Record (DN 13-1) at 970 (Dotson 2/6/18 Assessment)).

The policy defines disability based on working ability and earning capacity:

You are disabled when Unum determines that:

- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
- you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

Policy at 16 (emphasis in original). Unum determined that Marselle was "able to perform the duties" of her "occupation" based on three reviews of her medical records. Admin. Record at 1398–99. Marselle contends that Unum had a conflict of interest as both the payer and "determiner" of benefits, focused too much on her plans to move to Michigan, and should have ordered a physical examination. Motion at 14–18. Because Unum was not subject to a conflict of interest that affected its decision-making, was within its right to consider non-medical evidence, and wasn't obligated to order a physical exam, the Court affirms its initial decision.

### A. Conflict of Interest

When one entity "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," this creates a conflict of interest. *Metropolitan Life Ins. Co v. Glenn*, 554 U.S 105, 108 (2008). Unum doesn't dispute that its roles as the determiner and payer of benefits pose an inherent conflict. Unum Response Brief (DN 25) at 3 (acknowledging "structural conflict of interest"). The significance of that conflict, however, "depend[s] upon the circumstances of the particular case." *Glenn*, 554 U.S. at 108. A conflict of interest carries greater weight "where an insurance company administrator has a history of biased claims administration," but less "where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Id.* at 117. A reviewing court looks for "evidence that the conflict in any way influenced the plan administrator's decision." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006).

Unum's reliance on its employees or contract workers, in Marselle's view, reveals its bias. Motion at 15. But "a file review by a qualified physician," the Sixth Circuit has held, is not "inherently objectionable." *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 296 (6th Cir. 2005). Instead, the adequacy of the review determines if the insurer acted arbitrarily. *Id.*

For the initial benefits decision, three people reviewed Marselle's medical records. The record indicates all three reviewers were Unum employees or contractors. *See id.* at 1349–52 (Griffin Review); 1382–85 (Lovette Review); 1388–90 (Bress Review). Each appears qualified to review medical records: Amanda Griffin is a registered nurse, Dr. Tammy Lovette is a "family medicine physician," and Dr. James Bress is an "internist." Unum Brief (DN 21) at 10–12. The Sixth Circuit has treated "cursory" arguments about reviewers' involvement in other medical reviews as insufficient to render decision arbitrary or capricious. *Cook v. Prudential Ins. Co. of Am.*, 494 F. App'x 599, 605 (6th Cir. 2012). Here, Marselle hasn't supplied any evidence *at all* that the reviewers had "any tendency to decide cases against the claimants." *Id.*

Nor does the record bear out Marselle's assertion that the reviewers "ignored the medical opinions provided by Marselle's treating medical providers." Motion at 15. ERISA doesn't require plan administrators to "accord special weight to the opinions of a claimant's physician," although they "may not arbitrarily refuse to credit a claimant's reliable evidence." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Each reviewer considered past diagnoses and opinions, as indicated by the summaries provided in the reviews and quotations pulled from Marselle's record. *See* Admin. Record at 1349–50 (Griffin); 1382–83 (Lovette); 1389 (Bress). Dr. Lovette also spoke on the phone with Marselle's primary-care physician, Dr. Dotson, and included a summary of the call in her review notes. *Id.* at 1349; *contra Shaw v. AT&T*

3

*Umbrella Ben. Plan No. 1*, 795 F.3d 538, 549 (6th Cir. 2015) ("Plan ignored favorable evidence from [plaintiff's] treating physicians by failing to make a reasonable effort to speak with them.").

Where the reviewers came to contrary conclusions, they indicated which medical files they relied on. Griffin, for example, explained that Marselle's self-reporting of walking difficulties is inconsistent: Marselle reported using a cane due to "neuropathy in her legs and lumbar stenosis," but a physical exam by Dr. Dotson on 5/8/18 indicated "normal gait" with no mention of assistive devices. *Id.* at 1351; *accord id.* at 1086 (Dotson 5/7/18 Exam) ("musculoskeletal" physical exam noting "Normal gait. Normal range of motion. Normal strength and tone."). And Griffin questioned whether Marselle's plan to "sell her current house and move to rural upper Michigan" to avoid contact with others is consistent with the desire to "make new friends and have visitors" that she expressed to her therapist. *Id.* at 1351; *accord id.* at 1233 (Valerie Fallon, PsyD notes).

Both reviewing physicians pointed to similar levels of support. Dr. Lovette acknowledged that Marselle has an "increased risk of infections," as her treating physicians noted, but "this risk has not translated into impairing frequency/duration of infections" based on past medical and pharmacy records. *Id.* at 1383. As Unum's denial letter explains, Dr. Mushtaq, an oncologist who examined Marselle in August 2017, noted that Marselle "used to have recurrent infections but for last 1-2 years frequency of infections are way less." *Id.* at 111 (Mushtaq 8/10/2017 Exam).

Marselle contends that the reviewers failed to consider that her employer no longer accommodated her work-from-home schedule and that returning to the office would expose her to significant health risks. Motion at 17. As a preliminary matter, the administrative record and Marselle's own factual description indicate that Humana no longer accommodated *part-time* work, not remote work. Marselle cites an email thread as proof she could no longer work at home: "I think the leader was allowing her to come in a portion of the time based on the 2-hour recommendation however are no longer able to accommodate." *Id.* (quoting Admin. Record at 974 (email thread between Unum and Humana about Marselle's limitations and accommodations)). But other materials in the administrative record suggest Humana could no longer accommodate part-time work, rather than remote work. Marselle quotes approvingly, for instance, Unum's occupation description, which states that Marselle "was not able to perform a *reduced* schedule" after being "moved to a work at home schedule." *Id.* at 2 (quoting Admin. Record at 1097) (emphasis added). She initially stated that she sought benefits because "her employer stated it was 'no longer able to accommodate' Marselle's work restrictions and accommodations for *part-time* work." *Id.* at 3 (quoting Admin. Record at 974 (email thread)) (emphasis added). These suggest the inability to accommodate applies to the part-time limitations, rather than remote work. And Marselle hasn't pointed to any other evidence

4

suggesting that Humana rejected future remote work or asserted that it had done so outside of quoting the email thread.*

And it's simply not true that the reviewers ignored the infection risks posed by an office setting. Dr. Lovette acknowledged that "Ms. Marselle does have increased risk of infections," but reasoned that "this risk has not translated into impairing frequency" based on "medical and pharmacy records." Admin. Record at 1383. Moreover, Dr. Lovette noted that "the level of contact in a (nonmedical) office setting would not pose excessive risk of infections." *Id.* So long as Marselle had "recovery time from acute illnesses," Dr. Lovette opined that she could continue to work, and her medical records didn't support "extended work absence." *Id.*

As to the pain issues, while the records reported "chronic" pain, Dr. Lovette found no evidence of worsening pain that would preclude a "sedentary" job like Marselle's. *Id.* In reaching this conclusion, she relied on Dr. Dotson's observation that Marselle's "peripheral neuropathy" was "unchanged" during a physical exam. *Id.*; *accord id.* at 865 (Dotson Progress Notes). Dr. Bress concurred because he "found no evidence to preclude [full-time] sedentary work" because Marselle "has been in no distress during multiple office visit[s] including 50 minutes BH sessions" and reports from multiple providers reported "normal gait." *Id.* at 1389.

Although Unum hasn't provided any evidence of "active steps to reduce potential bias," Marselle likewise hasn't provided evidence that the conflict influenced Unum's decision-making. *Glenn*, 554 U.S. at 117. So the Court considers the conflict of interest in reviewing Unum's decision-making, but will not accord it dispositive weight. *See Collins v. Unum Life Ins. Co. of Am.*, 682 F. App'x 381, 387 (6th Cir. 2017) (inherent conflict of interest without other indicators doesn't render a benefits decision arbitrary and capricious).

### B. Non-Medical Information

Next, Marselle takes issue with Unum's focus on her plans to move to Michigan. Motion at 16. Considering non-medical evidence isn't inherently problematic: it may, for example, provide circumstantial evidence of the severity of the disability or how it impacts the claimant's ability to work. *Cf. DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 447–48 (6th Cir. 2009) (implying that insurers may examine "non-medical evidence" in determining benefits). Instead, the Court examines the conclusions that Unum drew from that evidence to determine if they're supported and relevant.

---

*This email thread contains conversations between Unum and Humana regarding Marselle's work accommodations and limitations. The dates shown on the email range from February 9 to February 14, in 2018, which is after Marselle's last day worked, November 10, 2017. *See* Motion at 2. Marselle hasn't cited any contemporaneous emails or other communications in the administrative record supporting her assertion that Humana couldn't accommodate remote work.

At the outset, Marselle's relocation plans didn't play a major role in Unum's final decision. Unum's denial letter first focuses on whether Marselle's pain and increased infection-risk prevent sedentary work; it doesn't cite her relocation plans at all. *See* Admin. Record at 1398–99. The document that Marselle cites as evidence of Unum's "adversarial approach" is an internal document summarizing Marselle's medical records that wasn't authored by any of her reviewers. Motion at 16 (citing *id.* at 1182). That document summarizes Marselle's statement to her therapist: "She then stated she was going on long term disability in mid-May and had recently bought a 'tiny house' and planned to live off the grid in MI (Michigan?)." Admin. Record at 1182. Which is an accurate summary of her therapist's session notes: "Client shared about her work toward setting up her tiny house in MI and preparing for that lifestyle." *Id.* at 1233 (Fallon Session Notes).

Second, Unum asked Marselle about her plans in an initial call about her claim. *See id.* at 1307–09 (Joshua Grace Notes re: Initial Contact Call with Marselle). Other than asking about the "tiny house," Grace asked Marselle "how [she] intends to live in the woods in a very rural area if she cannot work." *Id.* at 1308. Grace then noted Marselle's response. *Id.* Unum is entitled to consider this non-medical information in its benefits review and can certainly ask questions related to her work capacity, which is relevant to her disability claim. *Cf. Delisle*, 558 F.3d at 447–48; *see also Black v. Long Term Disability Ins.*, 582 F.3d 738, 747 (7th Cir. 2009) (insurers may consider non-medical information, especially where "relevant" to the claim).

**C. File Review**

Unum's long-term disability policy authorizes it to order a physical exam of a claimant: "We *may* require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice." Policy at 16 (emphasis added). Marselle concedes this merely "allow[s]" rather than requires an examination. Motion at 17. Even so, she contends that the failure to order a review bears on the "thoroughness and accuracy" of Unum's decision. *Id.* (quoting *Shaw*, 795 F.3d at 538).

The choice to review records in lieu of a physical exam is "just one more factor to consider" and insufficient, "standing alone," to show arbitrary decision-making. *Calvert*, 409 F.3d at 295. The Sixth Circuit "has found fault with file-only reviews in situations where the file reviewer concludes that the claimant is not credible without having actually examined him or her" and in instances where "the plan administrator, without any reasoning, credits the file reviewer's opinion over that of a treating physician." *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 663 (6th Cir. 2013) (citing *Bennett v. Kemper Nat'l Servs.*, 514 F.3d 547, 555 (6th Cir. 2008) & *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006)). Here, that factor is relatively minor given the other indicia of reliability discussed above. The file reviewers didn't discredit Marselle to reach their result; often they agreed with her treating physician's diagnoses. And the reviewers provided sufficient "reasoning" to explain why the file reviewer's opinions took precedence. So the failure to seek a physical exam doesn't indicate Unum's decision was arbitrary or capricious.

### III. Marselle's Appeal

When Marselle appealed the initial denial of benefits, Unum affirmed its position. Admin. Record at 1418–19 (Marselle Appeal Letter); 1466–71 (Unum Final Denial). She contends that Unum exceeded the timeline for deciding a claim stated in its policy. *Id.* at 1418. She no longer raises any timing issues in this motion and instead claims the two new file reviewers for the appeal ignored evidence of Marselle's limitations and "cherry-picked" helpful evidence. Motion at 21.

Certainly, insurers may not omit "relevant information" when performing file reviews. *Mokbel-Aljahmi v. United Omaha Life Ins. Co.*, 706 F. App'x 854, 865 (6th Cir. 2017). And relying on one type of evidence, to the exclusion of other allowable forms, has been described as "the definition of arbitrary and capricious." *Outward v. Eaton Corp. Disability Plan for U.S. Emps.*, 808 F. App'x 296, 318 (6th Cir. 2020). Unum, however, fully reviewed Marselle's file, fairly represented unfavorable information, and offered a reasoned explanation to support its decision.

In its second—and final—denial letter, Unum explained that "all of [Marselle's] medical conditions alone and in aggregate" fail to "preclude[e] [Marselle] from performing [her] occupational duties on a full-time basis." Admin. Record at 1470. The letter is divided into three sections: "Diagnostic imaging," "Examination findings," and "Intensity of symptoms and symptom management." *Id.* at 1468–69. The review references Marselle's "10-year history of low back pain," "high risk of infections," and "neuropathy … [that] could preclude standing or walking for long periods." *Id.* But this didn't constitute disability as defined in the plan:

> Your reported and prescribed activity level is compatible with retained sedentary functional capacity: you reported getting a puppy that lifted your mood in the spring 2018; you plan to move your household from Kentucky to Michigan and grow your own food which suggests the functional capacity for at least sedentary to light activities; and your PCP letter of February 8, 2018 indicated "getting outside and exercising would be helpful as well."

*Id.* at 1470; *accord id.* at 970 (Dotson Letter dated 2/8/18).

Meanwhile, Unum determined that Marselle's "limited" pain treatment was "inconsistent with severe or impairing pain" and that the "available medical notes" don't indicate "side effects that rise to a level of impairment." *Id.* at 1470. The letter also accounted for MRI images of Marselle's spine from 2017 and records from Marselle's primary-care provider. *Id.* at 1468. Specifically, later examinations "from 2017 through May 2018 consistently noted: normal neck range of motion (ROM), normal gait," suggesting that Marselle's "worsening complaints of chronic pain" hadn't reached the level she claimed. *Id.* Because "the record as a whole supports the reviewers' opinion," the decision was neither arbitrary nor capricious. *Cook*, 494 F. App'x at 607.

But the reviewers, according to Marselle, misinterpreted the record with respect to Marselle's pain management. She takes issue with this particular characterization:

> While some chart entries suggested the pursuit of a lumbar epidural steroid injection on July 7, 2017, there was no procedure note or follow-up visit indicating the response to this intervention; and, the pain management record of May 24, 2018 indicated you had avoided epidural injections in the past.

Motion at 20 (quoting Admin. Record at 1469). In her view, this misstates what she said to Unum, which is that "the July 7, 2017 did not occur due to the risk of infection" and that it was "cancelled due to the dx of hypogammaglobulinemia." *Id.* (quoting Admin. Record at 180). Unum's characterization is consistent with what Marselle provided: it's true that "there was no procedure note or follow-up visit" because Marselle cancelled it "due to risk of infection." *Id.* The letter didn't say otherwise. And elsewhere in the letter, Unum explicitly noted that "elective surgery would not be recommended due to a high risk of infections." Admin. Record at 1469.

Finally, Marselle contends that Unum violated its fiduciary duty under ERISA to act "solely in the interests of the participants" and to "provide a full and fair review of claim denials." Motion at 22 (quoting *Glenn*, 554 U.S. at 115). To be clear, she doesn't raise this as a separate claim but simply asserts it as an additional reason that Unum acted arbitrarily and capriciously. But nothing in Marselle's laundry list of alleged wrongdoings indicates that Unum violated those duties. She instead rehashes similar arguments: Unum put too much emphasis on her relocation plans and should have ordered a physical exam. But Unum was allowed to consider non-medical information and rely on file reviews. Neither factor renders its decision arbitrary or capricious for the initial denial, and neither does so for the subsequent denial.

## ORDER

The Court denies Marselle's motion for judgment reversing the administrative decision (DN 20).

Benjamin Beaton, District Judge
United States District Court

July 17, 2022

8